# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MELISSA P. CHOQUETTE,**

                **Plaintiff,**

-vs-                                            **Case No. 6:08-cv-2060-Orl-GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

                **Defendant.**

_____

## MEMORANDUM OF DECISION

Melissa P. Choquette (the "Claimant") appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits beginning October 31, 2005. Doc. No. 1. Claimant maintains that the Commissioner's final decision should be reversed because the Administrative Law Judge (the "ALJ") erred by: giving great weight to the opinions of non-examining state agency consultants; failing to provide good cause for giving limited weight to the opinion of the consultative examining psychologist, Dr. Stewart; failing to properly apply the pain standard; not finding Claimant meets or equals Listing 12.04 for affective disorders; and failing to pose a complete hypothetical question to the Vocational Expert (the "VE"). *See* Doc. No. 12 at 1-19. Claimant also maintains generally that ALJ's decision is not supported by substantial evidence. Doc. No. 12 at 1, 18-19. The Commissioner's decision is **REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) because the ALJ erred by giving great weight to the opinions of the non-**

**examining state agency consultants and by not having sufficient reasons, supported by substantial evidence, to give limited weight to Dr. Stewart's opinion.**

## I.    BACKGROUND

Claimant was born on August 31, 1968, and she completed high school as well as some college credits.  R. 32-33, 102.  Claimant's past employment experience includes working as a phone operator, receptionist, and secretary.  R. 34, 125. Claimant has not worked since October 31, 2005.  R. 35, 124.  On January 10, 2006, Claimant filed an application for disability insurance benefits and supplemental security income alleging an onset of disability as of October 31, 2005.  R. 102-10.  Claimant alleges disability due to bipolar disorder, depression, panic attacks, agoraphobia, personality disorder, a factor IV blood clotting disorder, asthma, status post deep vein thrombosis ("DVT") with pulmonary embolism, and a vena cava filter  placement in 2002.  R. 124, 190.

## II.    RELEVANT MEDICAL AND OPINION EVIDENCE[1]

Since at least August 5, 2002, Claimant has received psychiatric treatment and medication at Circles of Care, Inc. ("Circles of Care").  R. 194, 399.[2]  On August 5, 2002, a document from Circles of Care, which is signed by Claimant and a Circles of Care provider, states that Claimant has been Baker Acted four times, is in a poor state of health, and is taking Wellburtin 100mg, Artanel 2mg, Geodon 80mg, and Xanax 1mg.  R. 399.

On April 27, 2005, Claimant presented for a "Psychiatric Diagnostic Interview and Examination" with Dr. Maria Uy, M.D. at Circles of Care.  R. 397.  Claimant reported that she

---

[1] Claimant does not dispute the ALJ's findings as to Claimant's physical impairments.  *See* Doc. No. 12 at 1-19. Therefore, this section will only address the medical and opinion evidence as to Claimant's mental impairments.

[2] Although an appointment record from Circles of Care shows that Claimant was treated there eight times prior to April 27, 2005, the record does not contain treatment notes from those appointments.  R. 194.

was stable, and was taking her medications as prescribed with no side-effects. R. 397. Mental status examination showed that the Claimant was well groomed, displayed good eye contact, euthymic mood, stable affect, no psychotic symptoms, insight and judgment were fair, and Claimant displayed no suicidal or homicidal ideation. R. 397. Dr. Uy diagnosed Claimant with bipolar disorder not otherwise specified. R. 397. Claimant's medications included Depakote 500mg, Risperdal 3mg, Artane 2mg, Wellbutrin 100mg, and Xanax 1mg as needed. R. 397.

On August 17, 2005, Claimant missed an appointment with Dr. Uy. R. 194. On September 5, 2005, presented to Dr. Uy and her history and mental status examination were unchanged. R. 396. On October 31, 2005, Claimant was admitted Circles of Care, Inc. for complex detoxification related to cocaine dependence. R. 193. Claimant was discharged on November 7, 2005. R. 193. Upon discharge, Dr. Alvarez recommended outpatient therapy and Narcotics Anonymous. R. 193. On December 29, 2005, Claimant presented to Dr. Uy stating that she was experiencing difficulty sleeping, but was otherwise stable. R. 395. Mental status examination was unchanged from October 17, 2005. R. 395. Trazodone 100mg, as needed, was added to Claimant's medication regimen. R. 395.

On March 7, 2006, Claimant presented to Dr. Donald A. Stewart, a clinical psychologist, for consultative examination and mental status examination. R. 196-97. Dr. Stewart diagnosed Claimant with bipolar disorder, hypertension, hyperlipidemia, and cocaine dependence in remission. R. 197. Dr. Stewart's report states the following:

> She does not drive. Grooming and hygiene were poor. The patient was disheveled and unkempt. The patient was cooperative towards the examiner, however, she was sensitive to any external noises and frequently would say, "what's that?" Both posture and gait are within normal limits and there were no involuntary movements.

The patient was the primary historian and records provided were utilized to assist in the evaluation. There were no attempts to manipulate or coerce the examiner and this is felt to be a genuine and accurate reflection of the patient's current mental status.

History reveals a longstanding cocaine dependence with multiple suicide attempts. The patient is unsure as to dates and means. She does recall being hospitalized in October 2005 at Circles of Care for a suicide attempt "by my medication." She was transferred to Twin Rivers Drug and Alcohol Treatment Facility and "I went through rehab." The patient has been cocaine free for approximately the last six months.

In addition to the above mentioned psychiatric issues, the patient suffers from Hypertension, Hyperlipidemia and has suffered multiple Deep Vein Thromboses. Also, she was diagnosed with Bipolar Disorder in 2000. Present medications include Coumadin, Zocor, Welbutrin, Depokote, Artane, Xanax, and Trazodone.

Work history reveals employment as a phone operator . . . as of October 2005. She has been unemployed since. At the present time, the patient is being treated by psychiatrists at the Circles of Care. . . .

Activities of daily living of grooming and hygiene and minimal household chores are accomplished slowly at the patient's pace. Social functioning is severely restricted. The ability to complete tasks in a timely and appropriate manner is poor. Decompensation and deterioration under duress is likely manifesting itself in a bipolar episode. Concentration, persistence and pace are poor.

Mental status [examination] reveals a 37 year old white female appearing much older than her chronologic age. Speech is clear and coherent as of this writing. Thought processes evidence paranoid tendencies. Content of thought is reflective of psychiatric disturbance. There is no evidence of auditory or visual hallucinations at this time. The patient's mood is depressed and affect is labile. It should be noted that during bipolar episodes that "I just get violent. I haven't been violent in quite some time because they have my medications pretty well figured out." The patient is orientated to person, place and time. Both recent and remote memory are compromised. Fund of information and intellect appear average or slightly below. The patient's insight and judgment is poor.

R. 196-97 (emphasis added).  Dr. Stewart states the following regarding Claimant's prognosis:

> Prognosis for this patient is poor.  She is [in] need of constant psychiatric attention and compliance with medication regimens. As of this writing, she does appear capable of managing her benefits, however, decompensated she would be prone to very poor judgment.

R. 197.  Thus, Dr. Stewart opined that Claimant's social functioning is severely restricted, her ability to complete tasks in a timely and appropriate manner is poor, and her concentration, persistence, and pace are poor.  R. 197.

On April 6, 2006, Dr. Pamela D. Green, Ph.D., a non-examining state agency consultant completed a Psychiatric Review Technique ("PRT") and a Mental Residual Functional Capacity Assessment ("MRFC") for Claimant's initial disability determination.  R. 60, 209-226.  In the PRT, Dr. Green opined that Claimant suffers from medically determinable impairments of Affective Disorders (Listing 12.04) and Substance Addiction Disorders (Listing 12.09).  R. 213. As to Claimant's Affective Disorder, Dr. Green opined that Claimant suffers from "bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes."  R. 216.  Dr. Green opined that Claimant's bipolar syndrome results in the following functional limitations: mild restrictions of activities of daily living; moderate difficulties in social functioning; moderate difficulties in maintaining concentration, persistence or pace; and Claimant has suffered from one or two episodes of decompensation, each of extended duration.  R. 223.  These functional limitations are commonly referred to as the "B" criteria.[3]  Dr. Green further opined that evidence of Claimant's bipolar syndrome does not

---

[3] To satisfy the "B" criteria for Listing 12.04, an individual impairments must result in at least two of the following: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked

establish the presence of the "C" criteria.[4]

Dr. Green provides the following remarks regarding her opinion:

> The [C]laimant is a 37 y.o. with college ed [work]:phone operator, sales [- -] alleges: PTSD, agoraphobia, panic attacks, bipolar d/o, blood problem. [Psychiatric history] MER indicates the [Claimant] has been in [outpatient mental health treatment and diagnosed] with bipolar d/o since early [2005]. Reported compliance wit[h] [treatment] and limited problems. The [Claimant] decompensated in last [2005] was [hospitalized with diagnoses of] bipolar d/o nos and cocaine dep. Referred for [treatment]. The [Claimant] went thru a rehab program and reports sobriety past 6 months. [Psychological Consultative Examination] 3/06 [diagnosed]: Bipolar d/o and cocaine dep in remission. MSE: looks older, some paranoid tendencies, no psychosis, mood [depressed], affect liable, patient reports some benefit with current meds. Orientated, memory compromised, [insight and judgment] poor. The [Claimant] is currently on med and in outpatient [treatment]. [Activities of Daily Living]: personal care, few [household] chores, money mgnt by husband, forgetful, reduced social [functioning], doesn't handle stress well. Based upon the mer the [Claimant] has a [history] of polysubstance abuse and bipolar d/o. The [Claimant] was [hospitalized] and participated in [substance abuse treatment]. The [Claimant] is responding to meds per MER. [Diagnosis] as above. The [C]laimant reports some reduced [concentration, persistence, and pace] and social [functioning]. See MRFC.

R. 225. As set forth above, Dr. Green utilized Dr. Stewart's consultative report and records from

Circles of Care in forming her opinions in the PRT. R. 225.

In Dr. Green's MRFC, she opined that in the area of understanding and memory,

---

difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration. 20 CFR pt 404, subpt. P, app. 1 § 12.04B.

[4] To meet the "C" criteria, there must be "[m]edically documented history of [an] affective disorder (12.04) of at least 2 years' duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement." R. 224.

Claimant is markedly limited in the ability to understand and remember detailed instructions, but not significantly limited in her ability to remember locations and work-like procedures as well as the ability to understand and remember very short and simple instructions. R. 209. In the area of sustained concentration and persistence, Dr. Green opined that Claimant is markedly limited in the ability to carry out detailed instructions, and moderately limited in the ability to maintain attention and concentration for extended periods as well as the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. R. 209. Dr. Green opined that Claimant is also moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 210. Dr. Green opined that in all other aspects of the area of sustained concentration and persistence, Claimant is not significantly limited. R. 209. Those areas include the ability to: carry out very short and simple instructions; sustain an ordinary routine without special supervision; and to make simple work-relate decisions. R. 209.

In the area of social interaction, Dr. Green opined that Claimant is not markedly limited in any area of functioning. R. 210. Dr. Green found that Claimant is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors and in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 210. Dr. Green opined that Claimant is not significantly limited in her ability to: interact appropriately with the general public; ask simple questions or request assistance; and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. R. 210.

In the area of adaptation, Dr. Green found that Claimant is not markedly limited in any area of functioning. R. 210. Dr. Green opined that Claimant is moderately limited in her ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. R. 201. Dr. Green determined Claimant is not significantly limited in her ability to be aware of normal hazards and take appropriate precautions, and to travel in unfamiliar places or use public transportation. R. 210.

Dr. Green provided the following remarks regarding her opinion:

> The [Claimant] can understand short simple routine data. The [Claimant] has a [history] of difficult social interactions. [The Claimant] [c]an communicate. The [Claimant] has reduced [concentration, persistence and pace]. The [Claimant] does travel the commun[i]ty as physically capable. The [Claimant] is in [outpatient therapy] and med mgmt. Remaining sober is encouraged.

R. 210.

On April 20, 2006, Claimant presented to Dr. Uy and reported that she was stable. R. 394. Claimant denied any side-effects from her medications. R. 394. Mental status examination showed that the Claimant was groomed, had good eye contact, normal speech, euthymic mood, constricted affect, no suicidal or homicidal ideation, no psychosis, and fair insight and judgment. R. 394. Dr. Uy continued Claimant's medications and diagnosed bipolar disorder, not otherwise specified, and anxiety disorder, not otherwise specified. R. 394.

Three months later, on July 13, 2006, Claimant presented to Dr. Uy stating that she "has been doing fairly well, but states in the past month, she has been having some auditory hallucinations that are inaudible." R. 393. Dr. Uy's mental status examination was similar to the April 20, 2006 examination with addition of auditory hallucinations that are inaudible. R. 393.

Dr. Uy increased Claimant's Risperdal to 4mg twice daily and increased Claimant's Xanax to 1mg four times daily. R. 393. Dr. Uy diagnosis remained the same except that Dr. Uy stated that Schizoaffective disorder, bipolar type needed to be ruled out. R. 393.

On August 10, 2006, Claimant presented to Dr. Uy stating that the increase in Risperdal was "significantly helpful," and "[t]he voices are under much better control." R. 392. Claimant also stated that Trazodone was not working well. R. 392. Mental status examination remained unchanged. R. 392. Trazodone was increased to 150mg at bedtime as needed. R. 392. On November 29, 2006, Claimant presented "quite distressed because her two grandchildren, twins, were stillborn at birth." R. 391. Claimant was "very depressed." R. 391. Dr. Uy referred Claimant to a therapist and increased her Trazodone to 300mg at bedtime. R. 391. Mental status exam showed Claimant was groomed, fair to good eye contact, normal speech, depressed mood, tearful affect, no suicidal or homicidal ideation, no psychosis, and insight and judgment were fair. R. 391. Claimant's diagnosis remained unchanged. R. 391. The appointment schedule for Circles of Care shows that Claimant underwent therapy on December 4, 2006, December 14, 2006, December 18, 2006, and January 2, 2007, but the record does not contain any treatment notes for those dates. R. 194.

On January 19, 2007, Dr. Theodore Weber, a clinical psychologist and non-examining state agency medical consultant completed a PRT and MRFC at the reconsideration stage of Claimant's disability determination. R. 64, 372-89. In the PRT, Dr. Weber opined that Claimant suffers from medically determinable impairments of Affective Disorders (12.04) and Substance Addiction Disorders (12.09). R. 372. As to Claimant's Affective Disorder, Dr. Weber concluded that Claimant suffers from bipolar disorder, not otherwise specified. R. 375. Dr.

Weber opined that Claimant's bipolar disorder results in the following functional limitations: moderate restriction of activities of dialing living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace, and Claimant has suffered from one or two episodes of decompensation, each of extended duration. R. 382. Dr. Weber also opined that the evidence does not establish the presence of the "C" criteria. R. 383; *see supra* note 3.

Dr. Weber's records contain the following remarks:

> CLMT is a 38 yo female alledging [sic] agoraphobia, PTSD, panic attcks, bi polar, manic depressive. CLMT is requesting a reconsideration of a prior [initial] decision. The CLMT stated that there is no worsening and there are no new MERs to provide. CLMT stated that her allegations are basically the same as in the initial period.

> CLMT attended a [psychological consultative examination] on 03/07/06 which indicated that CLMT arrived to the [consultative appointment] with husband. CLMT does not drive. CLMT presented herself with poor hygiene and grooming. CLMT was disheveled and unkempt. Claimant was cooperative towards the [examiner], however, was sensitive to any external noises. Posture and gait were [normal] and there were no involuntary movements. CLMT was primary historian. CLMT has had work [history] of being employed as a phone operator . . . [and last worked on] 10/2005. Speech was clear and coherent. Thought processes evidenced paranoid tendencies. Content of thought was reflective of psychiatric disturbances. There was no evidence of auditory or visual hallucinations. Mood was depressed and affect was labile. CLMT reported not being violent since they have figured out her meds. CLMT was orientated x 3. Both recent and remote memory were compromised. Fund of information and intellect appeared average or slightly below. Insight and judgment were poor. CLMT has [diagnosis] with bipolar disorder; cocaine dependence, presently in remission. CLMT did appear capable of handling own benefits.

> CLMT has had [history] of treatment from Circles of Care. CLMT was [diagnosed] with bipolar disorder, NOS on 09/08/2005.

> CLMT has been in outpatient mental health treatment since early
> 2005. It was reported that the CLMT was in compliance with
> meds and treatment with limited problems. CLMT decompensated
> and was hospitalized for bipolar disorder nos and cocaine
> dependence. CLMT had gone through a rehab program and
> reported sobriety in the last six months.
>
> ADL, CLMT reported that she is able to take care of her personal
> hygiene, dress herself without any problems. CLMT needs
> remind[ing] to bathe. CLMT is able to do some [household]
> chores. The finances are handle[d] by husband. CLMT appears to
> get along with husband and he will drive her around to APPTMTS
> when necessary. She can follow instructions.

R. 384. Based on Dr. Weber's above statement that no new medical records were provided prior

to his PRT and MRFC, it appears that Dr. Weber did not have the benefit of Dr. Uy's records

from April 20, 2006 through January 2, 2007. R. 384. Dr. Weber's opinion is based upon Dr.

Stewart's consultative examination and only those Circle of Care records which were also

available to Dr. Green. R. 384.

Dr. Weber's MRFC findings are identical to Dr. Green's MRFC. R. 209-10, 386-87.

Thus, Dr. Weber opined that Claimant is markedly limited only in the abilities to understand and

remember detailed instructions and to carry out detailed instructions. R. 386. Dr. Weber also

provided the following remarks:

> CLMT appears capable of understanding short simple instructions
> and routines. CLMT had reduced [concentration, persistence, and
> pace]. CLMT is able to leave home and travel in [a] car. She
> denies current substance abuse.

R. 388.

On January 31, 2007, Claimant presented to Dr. Uy stating that her mood has been stable

and she is sleeping better with the increase in Trazodone. R. 390. Mental status examination

showed that Claimant was groomed, demonstrated good eye contact, normal speech, less

depressed mood, congruent and stable affect, no suicidal or homicidal ideation, no psychosis, and fair insight and judgment.  R. 390.  Claimant's medications were unchanged.  R. 390.  On May 10, 2007, and May 17, 2007, Claimant presented to Circles of Care for therapy, but the record does not contain any treatment notes from those therapy sessions.  R. 194.

On May 23, 2007, Claimant presented to Wuesthoff hospital complaining of suicidal ideation.  R. 410.  The emergency room records show Claimant stated she was experiencing depression since February and developed suicidal ideation for the past two to three weeks.  R. 412.  Dr. David Gillis's clinical impressions were major depression, suicidal ideation, and substance abuse.  R. 413.  Claimant's presentation was sad, her affect expressive, and hallucinations were denied.  Claimant was Baker Acted and admitted to the hospital's psychiatric ward under suicide precautions.  R. 410, 413, 422-24, 427.  Claimant was medicated and received inpatient treatment for five days.  R. 427.

Dr. Paul Baldizzi stated the following regarding the reasons for Claimant's hospitalization:

> The patient [has] a history of bipolar disorder, cluster B type personality disorder with borderline and histrionic traits, as well as recent grief associated with the loss of her 19-year-old son who was murdered last month, presently admitted to [the hospital] for further inpatient psychiatric observation, evaluation and stabilization on a Baker Act Form 52 which was initiated in the Emergency Room after the husband brought her there due to worsening depression with suicidal ideation in the context of inability to cope with the loss of her son and family problems.  She was placed on a Baker Act . . . and transferred . . . for further inpatient evaluation and treatment.  [D]rug screen was positive for [anti-depressants] and marijuana.  Alcohol was undetectable.  The rest of her laboratory studies were noncontributory.
>
> The patient appears to be a fair historian on examination today.  She states she is in the hospital because she has been having

difficulties coping with the loss of her son and she starts crying. She states that she had been relatively stable in that she had been going to grief therapy at Circles of Care and seeing Dr. Uy, but apparently her mother sent her a picture of her deceased son in the mail and she was all alone and started crying and felt hopeless. She called her therapist and told the therapist that she felt like ending it all and wanted to be with her deceased son. She states that she wanted to be with her deceased son because that was the son "that took care of me" . . . . The husband then came home and found her in distress and brought her to the Emergency Room. The patient denies that she had any plan or intent to kill herself. She is denying any residual thoughts of suicide today sitting [sic] that she is over her acute episode. She remains depressed but no longer suicidal.

She states that she has been compliant with her outpatient psychotropic medications including Risperdal, Wellbutrin, Trazodone and Xanax. She denies misuse of the Xanax. She states she takes it four times a day. She states that she has been on the same psychotropic medications for years without any recent changes. She admits to smoking a little marijuana which a friend gave her to help her cope since her son's death but only used it once. She denies regular use of marijuana. She denies use of other illicit psychoactive drugs including cocaine, hallucinogens or ecstacy. She denies any perceptual disturbances or other psychotic symptoms. No evidence of hypomania or mania on review of systems. . . .

R. 428-29. Dr. Baldizzi diagnosed Claimant with bipolar disorder, not otherwise specified, and personality disorder, not otherwise specified. R. 430. Dr. Baldizzi opined that Claimant's condition was moderate to severe and assigned a GAF score of 30. R. 430. Dr. Baldizzi added Celexa 20mg, increased Claimant's Risperdal to 4mg twice daily, and reduced Xanax. R. 427, 431. Thereafter, Claimant's "mood improved markedly." R. 427. On May 28, 2007, Claimant was discharged from the hospital and referred to Dr. Uy for continued outpatient therapy. R. 427, 431.

On May 29, 2007, Claimant presented to Dr. Uy continuing to be "quite upset" and

reported that she was seeing a counselor regularly. R. 439. Mental Status examination showed the Claimant was groomed, made good eye contact, she was crying at times during the exam, depressed mood, no suicidal or homicidal ideation, no psychotic symptoms, and insight and judgment were fair. R. 439. Dr. Uy continued Claimant's medications and scheduled a follow up appointment in three months. R. 439. On June 13, 2007, Claimant presented prior to scheduled appointment stating that she was continuing to have difficulty grieving over her son. R. 438. Claimant reported attending weekly therapy sessions. R. 438. Mental status examination showed Claimant was groomed, had fair eye contact, was tearful throughout the exam, mood appeared depressed, affect was tearful, denied any suicidal or homicidal ideation, no psychotic symptoms, and insight and judgment were fair. R. 438. Claimant's medications were continued and she was encouraged to continue her weekly therapy sessions. R. 438.

On August 23, 2007, Claimant presented to Dr. Uy still experiencing "significant difficulty with the loss of her son." R. 437. Claimant reported that she is crying every day, has not been eating well, and has not been sleeping very well. R. 437. Dr. Uy's notes state that "[s]upportive intervention was made. She also continues to attend a bereavement group as well as I encouraged her to continue in therapy." R. 437. Mental status examination show Claimant was only fairly groomed, had fair eye contact, normal speech, depressed mood, tearful affect, not "actively suicidal or homicidal," no "overt psychotic symptoms," orientated, and insight and judgment were fair. R. 437. Claimant's medications remained the same except that Trazodone was decreased to 150mg at bedtime and Abilify 2mg at bedtime was added to Claimant's medication regimen. R. 437.

On September 20, 2007, Claimant presented to Dr. Uy stating that she had to stop taking

Abilify because it made her nauseous.  R. 436.  Claimant continued to struggle with the loss of her son and agreed to go to a therapy session.  R. 436.  Lithium 300mg at bedtime was added to help Claimant cope with her depression and Trazodone was increased to 300mg. R. 436.  Mental status examination show Claimant was groomed, demonstrated fair eye contact, mood was depressed, affect tearful, not suicidal or homicidal, no psychotic symptoms, and insight and judgment were fair. R. 436.  On October 17, 2007, Claimant presented stating that the addition of Lithium was significantly helpful and she experienced no side-effects.  R. 435.  Claimant was less tearful and requested to take a higher dose of Lithium due to its therapeutic effects.  R. 435.  Mental status examination showed Claimant was groomed, demonstrated good eye contact, normal speech, mood appeared less depressed, affect was congruent and stable, no suicidal or homicidal ideation, no psychotic symptoms and insight and judgment were fair.   R. 435.  Claimant's Lithium was increased to 300mg twice daily.  R. 435.  There are no other mental health records or opinions in the administrative record.

## III.    PROCEEDINGS BELOW

Claimant's application was denied initially and upon reconsideration.  R. 60-73, 76-83.  Thereafter, Claimant requested a hearing before an ALJ.  R. 85.  On April 9, 2008, a hearing was held before ALJ Robert D. Marcinkowski.  R. 28-59.  Claimant, her husband, and VE Susanna Roche, were the only persons to testify at the hearing.  R. 28-59. At the hearing, Claimant was represented by counsel.  R. 28-59.

On June 9, 2008, the ALJ issued a decision finding Claimant not disabled.  R. 13-27. The ALJ made the following findings:

1.  The Claimant meets the insured status requirements of the Social Security Act through December 31, 2009;

2. The Claimant has not engaged in substantial gainful activity since October 31, 2005, the alleged onset date;

3. The Claimant has the following severe combination of impairments: an affective disorder, cocaine dependence in remission, and deep vein thrombosis, status post filter insertion and anti-coagulation therapy;

4. The Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments;

5. After careful consideration of the entire record, the undersigned finds that the Claimant could lift/carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk for a total of 6 hours in an 8-hour workday; and sit for a total of 6 hours in an 8-hour workday. She also has psychologically based symptoms, which affects her ability to concentrate upon complex or detailed tasks but would remain capable of understanding, remembering and carrying out simple job instructions, performing simple routine tasks, and, having occasional interaction with the public.

6. The Claimant is unable to perform any past relevant work;

7. The Claimant was born on August 31, 1968, and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date;

8. The Claimant has at least a high school education and is able to minimally communicate in English;

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Claimant is "not disabled," whether or not the Claimant has transferable job skills;

10. Considering the Claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Claimant can perform; and

11. The Claimant has not been under a disability, as defined in the Social Security Act, from October 31, 2005 through the date of this decision.

R. 26. At step-two of the sequential evaluation process, the ALJ specifically found that

Claimant's mental impairments result "in limitations of her ability to maintain sustained attention

and concentration. These impairments are therefore severe." R. 17. However, the ALJ found

that Claimant's mental impairments, individually and in combination, do not meet or medically equal one of the listed impairments.  R. 17.

In making the above finding, the ALJ stated the following:

> [T]he undersigned . . . has given particular consideration to the [C]laimant's . . . mental impairments.  Despite the [C]laimant's combined impairments, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.

R. 17.  The ALJ then reviewed the mental health evidence of record.

> On October 31, 2005, psychiatrist, Dr. Alvarez, at Circles of Care, Inc., examined the [C]laimant.  He recommended outpatient counseling as well as education, counseling on addiction and relapse factors and prevention regarding the effects of alcohol, cocaine, opiates, and bexodiazepines.  Dr. Alvarez diagnosed cocaine dependence and bipolar disorder, not otherwise specified. Additionally, he recommended that the [C]laimant attend Narcotics Anonymous (NA) meetings.

R. 17.  The ALJ stated the following regarding Dr. Stewart:

> On March 6, 2006, Donald A. Stewart, Psy.D., performed a consultative psychological evaluation with mental status examination.  The [C]laimant reported she did not drive.  Her grooming and hygiene were poor and she was disheveled.  Dr. Stewart noted that she was cooperative but was sensitive to any external noises.  The [C]laimant's history discloses longstanding cocaine dependence with multiple suicide attempts.  She was unsure of dates and means but did recall being hospitalized in October 2005 at Circles of Care for a suicide attempt "by my medication."  She reported that she was transferred to Twin Rivers Drug and Alcohol Treatment Facility to enter a rehabilitation program.  She remained cocaine free for approximately six months.  Additionally, she is diagnosed with hypertension, hyperlipidemia, deep vein thrombosis and bipolar disorder. Medications included Coumadin, Zocor, Wellbutrin, Depakote, Artane, Xanax, and Trazodone.  She reports she is under care of the psychiatrists at Circles of Care.  Her daily activities of living of grooming and hygiene and minimal household chores are

accomplished slowly. Her social functioning is severely restricted. Her ability to complete tasks in a timely and appropriate manner is poor. Decompensation and deterioration under duress is likely manifesting itself in a bipolar episode. Her concentration, persistence and pace are poor. Mental status revealed her thought process appeared to have paranoid tendencies. Her content of thought was reflective of psychiatric disturbance. Her mood was depressed and affect was liable. She reported that during bipolar episodes that "I just get violent." Currently, her violent behavior was well controlled with her medication. Dr. Stewart noted that the [C]laimant's recent and remote memory was compromised. Her fund of information and intellect appeared average or slightly below. Her insight and judgment were poor. Diagnosis was bipolar disorder, hypertension, hyperlipidemia, and cocaine dependence, presently in remission. The [C]laimant's prognosis was poor. Dr. Stewart stated that the [C]laimant was in need of constant psychiatric attention and compliance with medication regimens. He felt she appeared capable at the time of the examination that she was able to manage her benefits, however, if she decompensated she would be prone to very poor judgment.

R. 17-18 (emphasis added). The ALJ gave limited weight to Dr. Stewart's opinion stating:

> Limited weight is assigned to Dr. Stewart's opinion as he apparently relied quite heavily on the subjective report of symptoms and limitations provided by the [C]laimant, and seemed to uncritically accept as true most, if not all, of what the [C]laimant reported. Yet, as explained elsewhere in this decision, there exists good reasons for questioning the reliability of the [C]laimant's subjective complaints. Moreover, the opinion expressed is quite conclusory providing very little explanation of the evidence relied on in forming that opinion.

R. 18 (emphasis added). Thus, the ALJ decided to give limited weight to Dr. Stewart's opinion because he found it: 1) uncritically accepted and relied heavily on Claimant's subjective statements; and 2) conclusory. R. 18.

Regarding Dr. Uy's treatment record, the ALJ stated the following:

> The medical evidence shows the [C]laimant has been under the care of psychiatrist, Maria Uy, M.D., for pharmacologic management. The [C]laimant underwent a psychiatric diagnostic

-18-

interview and examination in April 2005. Dr. Uy diagnosed bipolar disorder, not otherwise specified. The [C]laimant's medication regimen included Depakote, Risperdal, Artane, Wellbutrin, and Xanax. In July 2006, the [C]laimant reported that she was taking her medications as prescribed and overall, she was doing fairly well but stated that the previous month she had been having some auditory hallucinations that were inaudible. Diagnosis was bipolar disorder, not otherwise specified; rule out schizoaffective disorder, bipolar type; anxiety disorder, not otherwise specified; and Factor V deficiency on Coumadin. The [C]laimant's Risperdal was increased. The record indicates Dr. Uy saw the [C]laimant on a regular basis for medication management. On January 31, 2007, the [C]laimant reported her mood was stable and she was sleeping better with the increase in Trazodone. She denied having any side[-]effects to her medications. She was groomed; had good eye contact; and her speech was within normal limits. Her mood was less depressed and affect was congruent and stable. Her insight and judgment were fair. Diagnosis was bipolar disorder, not otherwise specified; anxiety disorder, not otherwise specified; and Factor V deficiency on Coumadin. Medication regimen included continuation of Depakote, Risperdal, Artane, Wellbutrin XL, Xanax, and Trazodone.

R. 18. The ALJ ultimately assigned significant weight to Dr. Uy's "opinion" stating:

> The record indicates Dr. Uy saw the [C]laimant from May 29, 2007 through October 17, 2007, for medication check and pharmacologic management. In September 2007, Dr. Uy reported that the [C]laimant continued to struggle with the loss of her son. The [C]laimant was advised to go back into therapy. Diagnosis was bipolar disorder, not otherwise specified, anxiety disorder, not otherwise specified; bereavement; and Factor V deficiency on Coumadin. Significant weight is assigned to Dr. Uy's opinion as it is supported by the other objective medical evidence and clinical findings of record. In deed [sic], certain aspects of the doctor's opinion are in fact consistent with the residual functional capacity determined in this decision.

R. 18-19 (emphasis added). In his decision, the ALJ noted that updated treatment records from

Dr. Uy were not available and stated the following:

> At the hearing, the undersigned noted that the record did not contain an updated psychiatric and/or psychological evaluation

> from Dr. Uy. The [C]laimant's representative stated that normally the doctor does a reevaluation and that he had asked Dr. Uy for a recent opinion but he had not received it. Further, the [C]laimant's representative stated that the treatment notes were very brief and the [C]laimant was not disclosing everything to her physician. However, based on the record it is obvious that the [C]laimant has had relatively infrequent trips to the doctor for the allegedly disabling symptoms and that the main focus of the office visits to see her psychiatrist, Dr. Uy, was primarily for pharmacological management. . . .

R. 22.

The ALJ also addressed Claimant's May 23, 2007, Baker Act hospitalization.

> On May 23, 2007, the [C]laimant was admitted to the hospital under a Baker Act due to suicidal thoughts. She was given multiple psychotropic medications including Risperdal, Wellbutrin, Trazodone, and Xanaz. Her mood improved markedly and at the time of discharge, she was not homicidal, suicidal, or psychotic. Discharge diagnosis on May 28, 2007, was bipolar disorder, not otherwise specified, most recent episode depressed.

R. 18. Regarding the PRTs and MRFCs of the non-examining state agency consultants, Drs. Green and Weber, the ALJ stated: "[G]reat weight is assigned [to their opinions] as their opinions are well supported by the other objective medical evidence as well as the clinical and diagnostic findings." R. 24.

When assessing the severity of Claimant's mental impairment, the ALJ stated the following:

> In activities of daily living, the [C]laimant has mild restriction. She is able to take care of her personal hygiene needs, independently. She is able to go on vacation, which requires prolonged sitting as a passenger in a motor vehicle. Indeed, she took a vacation to South Carolina in July 2006, and while on another vacation in August 2007, she unfortunately was slightly injured while rock climbing.

> In social functioning, the [C]laimant has moderate difficulties. She

reported on January 27, 2006, that she attends church once a week with someone accompanying. However, she testified that she does not like being around people because she becomes upset and nervous.

With regard to concentration, persistence or pace, the [C]laimant has moderate difficulties. The [C]laimant testified that she watched television programs, as she is able to follow the story line but does not read because she is unable to concentrate. Additionally, she reported that she does drive but limits the amount of driving as she has difficulty with concentration. One need only consider that even minimal operation of a motor vehicle requires substantial attention and concentration, understanding, remembering and carrying out of complex functions, and substantial exercise of independent judgment. However, the medical evidence does demonstrate the [C]laimant has periods of depression, which may affect her ability to maintain substained concentration.

As for episodes of decompensation, the [C]laimant has experienced one to two episodes of decompensation. The [C]laimant was hospitalized in October 2005, at Circles of Care for a suicide attempt due to overdose of her medications. However, she was sent to Twin Rivers Drug and Alcohol Treatment Facility for cocaine dependency and went through rehabilitation successfully. On May 23, 2007, the [C]laimant was Baker Acted into the hospital due to suicidal thoughts after the murder of her son. She was treated successfully with medications and discharged in stable condition on May 28, 2007.

R. 19. Thus, the ALJ gave significant weight to the opinion of Dr. Uy, great weight to the opinions of the non-examining state agency consultants, and limited weight to the opinion of the examining medical consultant. R. 18-19, 24.

After the ALJ issued his decision, Claimant requested review before the Appeals Council and, on November 20, 2008, the Appeals Council denied Claimant's request for review making the ALJ's decision the final decision of the Commissioner. R. 1-9. On December 10, 2008, Claimant appealed the Commissioner's final decision to the District Court. Doc. No. 1.

## IV.    THE PARTIES' POSITIONS

The Claimant assigns six errors to the Commissioner's final decision.  Doc. No. 12.
First, the ALJ erred by giving great weight to the opinions of the non-examining state agency
physicians, and more weight to their opinions than the opinion of Dr. Stewart, the examining
consultant.  Doc. No. 12 at 13-15, 18-19.  Second, the ALJ erred by failing to demonstrate good
cause for giving limited weight to Dr. Stewart's opinion.  Doc. No. 12 at 13-15. Third, the ALJ
erred in assessing Claimant's credibility and failed adhere to SSR 96-7p.  Doc. No. 12 at 17-18.
Fourth, the ALJ's decision is not supported by substantial evidence.  Doc. No. 12 at 18-19.
Fifth, the ALJ erred by failing to find Claimant's mental impairment met listing level severity or
medically equaled listing level severity for Listing 12.04, Affective Disorder.  Doc. No. 12 at 7-
12.  Sixth, the ALJ erred by failing to pose a complete hypothetical question to the VE which
included all of Claimant's functional limitations. Doc. No. 12 at 15-17.   Thus, Claimant requests
that the Court reverse and remand the case to the Commissioner for an award of benefits, and
award Claimant attorneys fees and costs.  Doc. No. 12 at 19.  Alternatively, Claimant requests an
order reversing and remanding the case to the Commissioner pursuant to sentence four of Section
405(g).  Doc. No. 12 at 19.

The Commissioner asserts the ALJ decision is supported by the opinions of the non-
examining state agency consultants.  Doc. No. 13 at 6-9.  Second, the Commissioner argues that
the ALJ did not err by giving limited weight to Dr. Stewart's opinion because the opinions of
consulting doctors who only examine a clamant once are not entitled to the same level of
deference as the opinions of treating physicians.  Doc. No. 13 at 6-12. More specifically, the
Commissioner maintains that Dr. Stewart's opinion is contradicted by the clinical findings of Dr.

Uy. Doc. No. 13 at 11. Third, the Commissioner maintains that the ALJ did not err in assigning little credibility to Claimant subjective statements regarding her symptoms and limitations. Doc. No. 13 at 13-15. The Commissioner asserts that the ALJ provided an extensive summary of the Claimant's and her husband's testimony and the ALJ provided specific and adequate reasons for finding said testimony not credible. Doc. No. 13 at 14-15. Fourth, the Commissioner maintains that substantial evidence supports the ALJ's decision. Doc. No. 13 at 1-16. Fifth, the Commissioner argues that the ALJ, based on the opinions of Drs. Green and Weber, properly found the Claimant's impairments did not meet or medically equal Listing 12.04. Doc. No. 13 at 4-9. Sixth, the Commissioner maintains that the ALJ posed a complete hypothetical question to the VE. Doc. No. 13 at 12-13. Thus, the Commissioner requests that the final decision be affirmed.

## V.   LEGAL STANDARDS

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§

404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975. If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 CFR § 404.1521. An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a

combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A mere diagnosis is insufficient to establish that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work activities. *See Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987). However, a remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations

secondary to his established impairments. In making this finding, the ALJ must consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical exertional requirements of work available in the national economy, jobs are classified as

sedentary, light, medium, heavy, and very heavy. 20 CFR § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

B.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account

evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord*, *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089-92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court

must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord*, *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[5]

## VI.   ANALYSIS

Claimant maintains that the ALJ erred by giving great weight to the opinions of the non-examining state agency consultants because their opinions do not constitute substantial evidence on which to base an administrative decision. Doc. No. 12 at 18-19. Claimant further maintains that the ALJ erred by giving limited weight to the opinion of Dr. Stewart, the examining consultant. Doc. No. 12 at 13-15. The Commissioner asserts that the opinions of non-examining state agency consultants support the ALJ's determination. Doc. No. 13 at 6-9. The Commissioner also asserts that the ALJ had good cause to reject or give limited weight to Dr. Stewart's opinion because it is contradicted by the clinical findings of Dr. Uy, Claimant's

---

[5] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

treating psychiatrist. Doc. No. 13 at 10-12. However, the ALJ did not give limited weight to Dr. Stewart's opinion because it contradicted the clinical findings of Dr. Uy. Instead, as set forth above, the ALJ gave limited weight to Dr. Stewart's opinion because Dr. Stewart's opinion: 1) relied too heavily and uncritically on Claimant's subjective statements; and 2) was "quite conclusory providing very little explanation of the evidence relied on in forming that opinion." R. 18.

The ALJ gave significant weight to the opinion of Dr. Uy, great weight to the opinions of the non-examining state agency consultants, and limited weight to the opinion of the examining medical consultant. R. 18-19, 24. The ALJ gave "significant weight" to Dr. Uy's "opinion as it is supported by the other objective medical evidence and clinical findings of record. In deed [sic], certain aspects of the doctor's opinion are in fact consistent with the residual functional capacity determined in this decision." R. 18-19. However, the record contains no "opinion" from Dr. Uy. Furthermore, the record contains no statement of any kind from Dr. Uy regarding any functional limitations Claimant's impairments impose on her ability to work. The record only contains treatment notes from Dr. Uy. R. 194, 390-99, 435-440.[6] Thus, Dr. Stewart's opinion is the only opinion in the record from an examining or treating physician as to Claimant's functional limitations.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability. The ALJ may, however, reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).

---

[6] Accordingly, the Court is perplexed by the ALJ's statement that "certain aspects of [Dr. Uy's] opinion are in fact consistent with the residual functional capacity determined in this decision." R. 18-19.

Nonetheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ stating the specific weight given to different medical opinions and the reasons therefore, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *See e.g. Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).[7] Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005). "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson,* 138 Fed.Appx. at 269. Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

While the opinion of a one-time examining physician may not be entitled to deference, especially when it contradicts the opinion of a treating physician, the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *McSwain v. Bowen*, 814 F.2d 617,

---

[7] The Regulations maintain that the administrative law judges "will always give good reasons in [their] . . . decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

619 (11th Cir. 1987) (opinions of one-time examiners are not entitled to deference because they are not treating physicians). The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

In an unpublished opinion, *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 850 (11th Cir. 2006), the Eleventh Circuit held that an ALJ did not err by rejecting the opinion of an examining physician that was based on subjective complaints without significant clinical findings. *Id*. The examining psychologist in *Ogranaja* based his opinion on the claimant's subjective statements rather than the psychologist's mental examination which showed focused thought content, intact memory, reasonable judgment, average intelligence, and logical thought process. 186 Fed.Appx. at 850. In *Logreco v. Astrue*, Case No. 5:07-cv-80-Oc-10GRJ, 2008 WL 783593 at *10 (M.D. Fla. Mar. 20, 2008), the District Court found that the opinion of an examining physician that was not accompanied by any objective evidence of examination or treatment was "wholly conclusory," and, therefore the ALJ did not err in rejecting that opinion. *Id*.

The present case is distinguishable from *Ogranaja* and *Logreco* because Dr. Stewart performed a mental status examination and did not base his opinion solely on the Claimant's subjective statements. As set forth above, Dr. Stewart's mental status examination revealed the following: clear and coherent speech; thought process evidences paranoid tendencies; content of thought is reflective of psychiatric disturbance; no evidence of auditory or visual hallucinations; depressed mood; liable affect; orientated to person, place, and time; compromised remote and recent memory; average to below average intellect; and poor insight and judgment. R. 196-97.

While Dr. Stewart did note that the Claimant was the primary historian, he also stated that he reviewed Claimant's records "to assist in the evaluation." R. 196.[8] Moreover, Dr. Stewart stated that "[t]here were no attempts to manipulate or coerce the examiner and this is felt to be a genuine and accurate reflection of the patient's current mental status." R. 196. Thus, Dr. Stewart did not uncritically accept Claimant's subjective statements. Instead, Dr. Stewart specifically considered whether Claimant was trying to manipulate him, and he determined that her statements accurately reflected his mental status examination. Accordingly, the Court finds that Dr. Stewart's opinion was not uncritically based solely on Claimant's subjective statements and was not conclusory. Thus, the ALJ's stated reasons for giving Dr. Stewart's opinion limited weight are not supported by substantial evidence.

Moreover, as set forth above, the only actual opinions afforded great weight by the ALJ were those of the non-examining state agency consultants.[9] However, those opinions do not constitute substantial evidence from which to base a decision. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).[10] Accordingly, the Court finds that the ALJ's decision is

---

[8] Claimant was accompanied by her husband and Dr. Stewart did not specify whether Claimant's husband provided any background facts. R. 196-97.

[9] The ALJ gave great weight to the opinions to the non-examining consultants because "they are well supported by the other objective medical evidence as well as the clinical and diagnostic findings." R. 24. As set forth above, however, both non-examining physicians relied on the opinion and mental status examination of Dr. Stewart. R. 225, 384. Considering that neither of the non-examining consultants conducted a mental status examination or any other objective medical test on the Claimant, it is curious that the ALJ would give great weight to their opinions, but reject Dr. Stewart's opinion as conclusory.

[10] It is also significant that the opinions of the non-examining consultants were based solely on Dr. Stewart's opinion and Claimant's medical records through March 7, 2006, the date of Dr. Stewart's examination. *See* R. 384 (stating that no new medical records were provided for Dr. Weber's PRT and MRFC). Thus, at the time of their opinions, the non-examining consultants did not have the benefit of the Claimant's updated medical records including: Dr. Uy's records from April 20, 2006 through January 2, 2007 (R. 194, 391-94). In those records, Claimant reported hearing voices, complained of increased depression, and Dr. Uy increased Claimant's Risperdal to 4mg twice daily, Xanax 1mg to four times daily, and Trazodone to 150mgs at bedtime as needed. R. 392-93. Claimant's Baker Act hospitalization occurred nearly five months after Dr. Weber's PRT and MRFC. R. 372-89, 410-31.

not supported by substantial evidence.

## VII. <u>CONCLUSION</u>

For the reasons stated above, it is **ORDERED** that the Commissioner's decision is

**REVERSED and REMANDED pursuant to sentence four of Section 405(g).** The Clerk is

directed to enter judgment in favor of the Claimant and close the case.

**DONE** and **ORDERED** in Orlando, Florida on February 18, 2010

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Bradley K. Boyd
Bradley K. Boyd, PA
1310 W Eau Gallie Blvd, Suite D
Melbourne, FL 32935

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Robert D. Marcinkowski
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr.
Orlando, Florida       32817-9801